# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

NICHOLAS BARKSDALE HOWARD,

    *Petitioner,*

vs.

RENEE BAKER, *et al.,*

    *Respondents.*

3:16-cv-00631-RCJ-CBC

ORDER

This habeas matter under 28 U.S.C. § 2254 comes before the Court on respondents' motion to dismiss (ECF No. 34). Respondents contend that certain claims are untimely, unexhausted and/or conclusory.

### *Background*

Petitioner Nicholas Howard challenges his 2010 Nevada state conviction, pursuant to a jury verdict, of burglary, grand larceny, and preventing or dissuading a witness from testifying or producing evidence, along with his adjudication as a habitual criminal under the "small" Nevada habitual criminal statute. On the first two offenses, he was charged with having entered a guest room in the former Las Vegas Club Hotel and Casino ("Las Vegas Club") in downtown Las Vegas and stolen a laptop computer owned by Ryan Ciminelli. According to the State's theory of the case, Howard entered the room while a housekeeping maid had the door open to clean the room; and he then walked out with the laptop. Howard was sentenced in principal part to a term of 60 to 240 months. He challenged his conviction via an authorized out-of-time direct appeal and on state postconviction review. (*See* ECF No. 15-19; ECF No. 16-2, at 4-5; ECF No. 17-4.)

*Discussion*

*Relation Back and Timeliness*

The original petition was timely, but the amended petition was filed after the expiration of the federal limitation period. Respondents contend that subparts (2), (4), (8), (9) and (10) of Ground 1 and the entirety of Ground 2 are untimely.

A claim in an amended petition that is filed after the expiration of the limitation period will be timely only if the claim relates back to a timely-filed claim pursuant to Rule 15(c) of the Federal Rules of Civil Procedure, on the basis that the claim arises out of "the same conduct, transaction or occurrence" as the timely claim. *Mayle v. Felix*, 545 U.S. 644 (2005). In *Mayle*, the Supreme Court held that habeas claims in an amended petition do not arise out of "the same conduct, transaction or occurrence" as prior timely claims merely because the claims all challenge the same trial, conviction or sentence. 545 U.S. at 655-64. Rather, under the construction of the rule approved in *Mayle*, Rule 15(c) permits relation back of habeas claims asserted in an amended petition "only when the claims added by amendment arise from the same core facts as the timely filed claims, and not when the new claims depend upon events separate in 'both time and type' from the originally raised episodes." 545 U.S. at 657. In this regard, the reviewing court looks to "the existence of a common 'core of operative facts' uniting the original and newly asserted claims." A claim that merely adds "a new legal theory tied to the same operative facts as those initially alleged" will relate back and be timely. 545 U.S. at 659 & n.5.

*Ground 1(2) and Ground 2*

Howard contends that Ground 1(2) and Ground 2 relate back to claims in the original petition because: (a) he attached a copy of a state supreme court order of affirmance with his petition (which the petition form instructions require); (b) the order therefore should be considered as part of his original petition; and (c) the order allegedly discussed claims based on the same core facts. After the filing of petitioner's opposition, the Ninth Circuit rejected his premise that a state court order is incorporated into the original petition by such attachment for purposes of relation back. *Ross v. Williams*, 896

2

F.3d 958, 963-73 (9th Cir. 2018). The Court is unpersuaded by Howard's remaining argument as to Ground 2. (*See* ECF No. 40, at 23.) Ground 1(2) and Ground 2 therefore do not relate back and are untimely.

*Ground 1(4)*

In Ground 1(4), petitioner alleges that he was denied effective assistance of counsel when trial counsel failed to interview and call as witnesses: (a) the maid who was cleaning the hotel room when Howard entered the room; (b) security guard Gary Stallworth; and (c) "at least two other" percipient witnesses, as to which he specifically identifies Shameka McDonald and Desiree Maroney. The first amended petition does not specify what testimony any of these witnesses would have given, other than to assert generally that their testimony would have bolstered an argument that he lacked the intent to commit a burglary. Howard further asserts that McDonald allegedly was threatened by detectives with having her children taken away if she did not implicate Howard. He alleges that defense counsel instead chose to pursue a defense theory that he took the laptop to recover an alleged debt that he was owed as a pimp. (ECF No. 14, at 16-18.)

The Court is not persuaded by Howard's argument that Ground 1(4) arises from the same core facts and relates back to generic allegations that "trial counsel did not conduct a full investigation on the allegations" of the case and failed "to obtain Brady material." (*See* ECF No. 40, at 19-20.) A claim that trial counsel failed to interview and call specified witnesses who allegedly would have supported an argument that he lacked the intent to commit a burglary does not relate back to bald generic claims that counsel either "failed to investigate" and/or failed "to obtain Brady material" from the prosecution.

Ground 1(4) does not relate back and is untimely.

*Ground 1(8)*

In what the Court will designate as Ground 1(8)(a), Howard alleges that he was denied effective assistance when trial counsel failed to investigate impeachment evidence based upon witness Valerie Burrell being involved in an extramarital affair with a police detective during the pendency of his case. Burrell worked as a surveillance video

3

operator at the Las Vegas Club. (ECF No. 16-2, at 7.) Howard alleges that the detective instructed Burrell "to edit the surveillance video at issue in this case – which resulted in eight separate videos being edited and combined into one video -- as if the video contained one fluid and singular occurrence." He further alleges that Burrell may have shown the detective a copy of the letter that Howard allegedly wrote to her that resulted in his conviction for preventing or dissuading a witness. Howard further alleges that trial counsel also failed to object "to the suggestive and leading questions that the State asked Ms. Burrell throughout the trial." He alleges that "had the jury been informed about Ms. Burrell's romantic relationship with a detective from the police department, this would have affected her credibility before the jury," leading at least one juror to have a reasonable doubt as to guilt. (ECF No. 14, at 22-23.)

In what the Court designates as Ground 1(8)(b), Howard alleges that he was denied effective assistance when trial counsel failed to investigate impeachment evidence as to the larceny victim, Ryan Ciminelli, based upon Ciminelli having engaged in sex with Howard's coconspirator Shameka McDonald. Howard alleges that Ciminelli testified at trial that he did not have a sexual relationship with McDonald.[1] He alleges that "[h]ad the original eight tapes been played in their entirety during trial, it would have shown Mr. Ciminelli and Ms. McDonald fondling, caressing, and kissing one another before they entered into the hotel room – thereby impeaching Mr. Ciminelli's testimony." Howard alleges that "had the jury been informed about Mr. Ciminelli's romantic relationship with

---

[1] Howard cites to the transcript from the state postconviction evidentiary hearing – held over five years after the trial – where the presiding judge and the testifying Howard were trying to recall whether Ciminelli had testified that he did not have sexual relations with McDonald. (*See* ECF No. 14, at 23, citing to ECF No. 21, at 91-92.) In the actual trial testimony, Ciminelli instead was asked only one question as to whether he knew "Shameka McDonald." He said that he did not. (ECF No. 16-2, at 26, at transcript page 92.) In closing argument, defense counsel suggested that – at that point in his testimony – Ciminelli looked highly uncomfortable and counsel suggested that Ciminelli did not want to tell a room full of strangers that he knew "a known prostitute." (ECF No. 16-6, at 17, at transcript page 56.) The Court has not been cited to any foundation testimony tending to establish that – even if Ciminelli *arguendo* had had sex with McDonald, even for money – that he knew her by her full legal name as opposed to perhaps some street alias. That is, for all that the cited portion of the actual trial record reflects, Ciminelli simply may not have known anyone by the name "Shameka McDonald." In all events, if the Court were to reach merits or merits-related issues on this ground, the matter would be decided based upon the actual trial record, not dimmed recollections of trial participants five years later at an evidentiary hearing. It perhaps should go without saying that the trial transcript is the *only* evidence of what witnesses actually testified to at trial.

4

witness and co-conspirator Shameka McDonald, this would have affected his credibility (and her statements) before the jury," leading at least one juror to have a reasonable doubt as to guilt. (ECF no. 14, at 23.)[2]

In opposing the motion to dismiss, Howard contends that these claims relate back to allegations in his original petition that defense counsel failed to adequately investigate the case because he did not view the original eight videos, that Burrell should have turned the original eight videos over to the police, and that her composite video instead was "a version minus exculpatory evidence [that she] created from her imagination of what took place." (ECF No. 6, at 4 & 6.)

Howard urges that he alleged in Ground 1(8) that "the detective instructed [Burrell] to edit the surveillance video *to make Howard appear guilty*, and that if the original tapes, rather than the edited tapes, had been played at trial, *both Valerie Burrell* and Ryan Ciminelli would have been impeached." (ECF No. 40, at 20, emphasis added.)

Counsel misstates the allegations of Ground 1(8), especially as to Ground 1(8)(a).

Howard made no allegation that the detective told Burrell to edit the video to make Howard appear guilty. That would have been a markedly different allegation – that the detective instructed her essentially to present false evidence – from the allegation in the amended petition only that he told Burrell to edit the eight videos into "one fluid and singular occurrence."[3] Nor did Howard allege that *playing the original videos* would have impeached Burrell's credibility at trial. He alleged that *presenting evidence of her affair with the detective* would have impeached Burrell's credibility at trial. That is a different

---

[2] McDonald was not a witness at trial. (*See, e.g.,* ECF No. 16-6, at 18, at transcript page 59.) Petitioner has not identified at this juncture any significantly inculpatory testimonial statements by McDonald that were introduced at trial, separate and apart from recorded telephone conversations between McDonald and Howard while he was in jail.

[3] Combining multiple surveillance video feeds into a unified video for trial hardly is an unusual practice nor is it one that necessarily implies that false evidence was presented. Habeas pleading is not notice pleading; and – absent leave to amend first being granted – a petitioner may not materially expand the allegations of his grounds after the amended petition is filed. *See, e.g., Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994). An allegation that a detective told a surveillance operator to present false evidence materially expands the allegations of a claim that instead alleges only that the operator's credibility should have been impeached by evidence that she was having an affair with the detective.

5

core of operative facts from the alleged facts supporting the claim in the original petition upon which Howard relies for relation back. Ground 1(8)(a), based as it is upon Burrell's affair with the detective, clearly does not relate back to a claim in the original petition and thus is untimely.

Ground 1(8)(b) presents a different question but also does not relate back. The specific allegations in Ground 1(8)(b) – that the unedited videos would have shown Ciminelli and McDonald engaging in foreplay before entering his hotel room allegedly contradicting his trial testimony – do not relate back to a bare allegation in the original petition that the videos contained unspecified exculpatory evidence. For claims to be based upon a common core of operative facts, actual facts, not conclusions, must be alleged. Ground 1(8)(b) does not relate back to the conclusory claim in the original petition and thus is untimely.[4]

Ground 1(8) therefore does not relate back and is untimely.

### *Grounds 1(9) and 1(10)*

Howard urges that the ineffective-assistance claims in these grounds relate back to claims in the original petition "because both the *pro se* petition and the amended petition raise ineffective assistance of counsel claims." (ECF No. 40, at 22.) This meritless argument does not warrant discussion.

Grounds 1(9) and 1(10) do not relate back and are untimely.

### *Exhaustion*

The untimeliness of Grounds 1(8), 1(9), 1(10) and 2 moots the parties' arguments regarding exhaustion of claims within these grounds. The only exhaustion issues that remain concern Ground 3 and part of Ground 4.

---

[4] The Court notes that Howard does not provide a record cite supporting his allegation in Ground 1(8) that the unedited videos "would have shown Mr. Ciminelli and Ms. McDonald fondling, caressing, and kissing one another before they entered into the hotel room." Nor is any video evidence listed as an exhibit in support of the amended petition. (*See* ECF No. 15.) It thus is not clear what evidence supports the allegation in the amended petition. Trial counsel's recollection at the evidentiary hearing, after referring to his contemporaneous notes, was that he reviewed the unedited videos with Howard and found no material difference in what they showed. (*See* ECF No. 21, at 10-11, 19-25 & 53-55. *See also* ECF No. 22-20, at 20-24.)

Under 28 U.S.C. § 2254(b)(1)(A), a habeas petitioner first must exhaust state court remedies on a claim before presenting that claim to the federal courts. To satisfy this exhaustion requirement, the claim must have been fairly presented to the state courts completely through to the highest state court level of review available. *E.g., Peterson v. Lampert*, 319 F.3d 1153, 1156 (9th Cir. 2003) (*en banc*); *Vang v. Nevada*, 329 F.3d 1069, 1075 (9th Cir. 2003). In the state courts, the petitioner must refer to the specific federal constitutional guarantee upon which he relies and must also state the facts that entitle him to relief on that federal claim. *E.g., Shumway v. Payne*, 223 F.3d 983, 987 (9th Cir. 2000). That is, fair presentation requires that the petitioner present the state courts with both the operative facts and the federal legal theory upon which the claim is based. *E.g., Castillo v. McFadden*, 399 F.3d 993, 999 (9th Cir. 2005). The exhaustion requirement insures that the state courts, as a matter of federal-state comity, will have the first opportunity to pass upon and correct alleged violations of federal constitutional guarantees. *See, e.g., Coleman v. Thompson*, 501 U.S. 722, 731 (1991).

Under *Rose v. Lundy*, 455 U.S. 509 (1982), and following cases, a petition presenting unexhausted claims in whole or in part must be dismissed unless the petitioner dismisses the unexhausted claims and/or seeks other appropriate relief, such as a stay to return to the state courts to exhaust the claims.

*Ground 3*

The insufficient-evidence claim in Ground 3 is exhausted. Respondents contend that Howard failed to "federalize" the claim in his appellate briefing. However, the Supreme Court of Nevada cited and applied the federal constitutional standard in *Jackson v. Virginia*, 443 U.S. 307 (1979), in its order of affirmance on the out-of-time direct appeal. (ECF No. 20-3, at 4-5.) When the highest state court expressly decides a federal constitutional claim on the merits, it is exhausted, regardless of the petitioner's state court briefing. *E.g., Casey v. Moore*, 386 F.3d 896, 916 n.18 (9th Cir. 2004).[5]

---

[5] Respondents do not argue to the contrary in their reply in support of the motion to dismiss, in which they present no further argument regarding Ground 3. (*See* ECF No. 43.)

7

*Ground 4*

Ground 4 is unexhausted to the extent that Howard seeks to base the cumulative-error claims also on trial-court error in addition to ineffective assistance of counsel. It is undisputed that the only cumulative-error claim presented as such to the state supreme court was a claim of cumulative error based upon alleged ineffective assistance of counsel that was presented during state postconviction review.

Petitioner's urges that he is not required to exhaust a claim of cumulative error because a cumulative error analysis allegedly must be conducted regarding every properly presented claim on federal habeas review. None of the cases cited by petitioner in support of this assertion address exhaustion of a cumulative-error claim, and thus none of the cases hold that cumulative-error claims are exempted from the statutory exhaustion requirement in § 2254(b)(1)(A). (See cases cited in ECF No.40, at 5-6.) Ninth Circuit caselaw instead clearly holds that such claims must be exhausted. *See, e.g., Wooten v. Kirkland*, 540 F.3d 1019, 1025-26 (9th Cir. 2008).[6]

Petitioner further urges that the cumulative-error claim is fully exhausted because he allegedly presented the underlying independent claims of trial-court error as standalone claims on direct appeal. This argument also is unpersuasive.

Ground 4 is unexhausted to the extent that it is based on alleged trial-court error rather than ineffective assistance of counsel. The entire petition must be dismissed without prejudice unless Howard either dismisses the unexhausted portion of the claim or obtains other appropriate relief, such as a stay.

////

////

---

[6] Petitioner maintains that while *Wooten* "suggests" that cumulative-error claims must be exhausted, the petitioner there did not argue that he was exempt from the exhaustion requirement. (ECF No. 40, at 5.) A controlling holding in a prior case is not reduced to a suggestion merely because a party in that case did not present a strained argument to the contrary. The exhaustion requirement is a statutory requirement under § 2254(b)(1). That statute defines narrow circumstances where a party is exempted from exhausting state court remedies. Cumulative-error claims are not included within those narrow exemptions. The Court is unpersuaded by petitioner's meritless argument that cumulative-error claims are exempted from the exhaustion requirement.

8

### *Allegedly Conclusory Claim*

Finally, respondents contend that the insufficient-evidence claim in Ground 3 fails to state a claim upon which relief may be granted because the claim is conclusory. Respondents posit that a petitioner challenging the sufficiency of the evidence "must state the 'essential element' of the crime in which the evidence was insufficient to find a guilty verdict." Respondents maintain that Howard fails to state the elements of burglary, fails to specify which element that he is attacking, and fails to analyze the facts to establish how the State failed to prove an essential element of the crime. (ECF No. 34, at 9.)

Ground 3 sufficiently states, albeit barely, a claim in that Howard alleges that he lacked the intent required to commit a burglary when he entered the open hotel room door. (ECF No. 14, at 23-24.) In the amended petition as a whole, Howard makes specific allegations in support of other claims laying out his theory as to why he allegedly lacked the requisite intent on the facts presented. (*See* ECF No. 14, at 13-14, 16 & 26.) It would serve no useful purpose at this point in the case to require Howard to amend the petition to explicitly set forth the same factual specifics under Ground 3 as well.

Ground 3 adequately states a claim upon which relief may be granted, albeit only barely so.[7]

---

[7] While the Court holds that Ground 3 marginally adequately states a claim given the whole pleading, that is not to say that Ground 3 is without issues. At the outset, Howard alleges that he "lacked the requisite intent to commit a *burglary* when he entered the open hotel room door." (ECF No. 14, at 26-27, emphasis added.) A reference to "intent to commit a burglary" is problematic. Under N.R.S. 205.060(1), "any person who . . . enters any . . . room . . . with the intent to commit grand or petit larceny . . . is guilty of burglary." It would perhaps be more apt in context to maintain that Howard did not enter the room with the intent to commit a *larceny.* That is, the relevant intent is not an intent to commit a "burglary" but instead is an intent to commit one of the predicate offenses listed in the burglary statute. The Nevada statute otherwise does not require breaking in or forcible entry, and consent to entry is not a defense if the person entered with felonious intent to commit one of the predicate offenses. *See, e.g., State v. White*, 130 Nev. 533, 537-38, 330 P.3d 482, 485 (2014). Howard's remaining allegations in the ground also are problematic. He urges that the maid was not able to identify him as the person who entered the room. That lack of identification will not establish insufficiency of the evidence under *Jackson v. Virginia* if a reasonable jury could find from the surveillance video that Howard entered the room and then left with the laptop. Howard in turn urges that the video is "incomprehensible." (ECF No. 14, at 27.) The state supreme court, however, found that the jury could see Howard in the video entering the room and leaving with the laptop. (ECF No. 20-3, at 5.) That appellate factual finding is entitled to substantial deference under AEDPA. In the amended petition, Howard cites to no record evidence that would call that factual finding as to what the video showed into any question; and he has not even listed the video as an exhibit in support of his claims. The record reviewed in connection with this order tends to suggest that a jury reasonably could find from the video that it was Howard who entered the room and then left with the laptop. (*See, e.g.,* ECF No. 21, at 26. *See also* ECF No. 16-6, at 18, at transcript page 58.) In all events, the claim is going to be decided based upon the

9

IT IS THEREFORE ORDERED that respondents' motion to dismiss (ECF No. 34) is GRANTED IN PART and DENIED IN PART, such that: (a) Grounds 1(2), 1(4), 1(8), 1(9), 1(10) and 2 are DISMISSED with prejudice as untimely; and (b) the Court holds that Ground 4 is unexhausted to the extent that petitioner bases the claim on alleged trial errors as opposed to alleged ineffective assistance of counsel.

IT IS FURTHER ORDERED that the entire petition will be dismissed unless, within thirty (30) days of entry of this order, petitioner either files a notice of voluntary dismissal of the unexhausted portion of Ground 4 or seeks other appropriate relief, such as a stay.

DATED: March 11, 2019.

                              _____
                              ROBERT C. JONES
                              United States District Judge

---

evidence presented at trial, not pejorative characterizations by federal habeas counsel in the pleadings. Howard further urges that: (a) the video trial exhibit was edited by a person who was not employed by the police department; and (b) the statements of Shameka McDonald and the testimony of Valerie Burrell were insufficient to sustain a burglary conviction because McDonald allegedly had sex with Ciminelli and Burrell had an affair with a police detective. (ECF No. 14, at 27.) Such allegations – on their face – go to the weight, not the sufficiency, of the evidence. Unless there is some compelling evidence – in the trial record before the state courts – supporting Howard's assertions in the amended petition regarding what the trial video exhibit shows, Ground 3 at present does not appear to present even a COA-worthy issue for any eventual appeal. Absent such compelling evidence in the trial record, counsel may wish to consider counsel's signing certification requirements under Rule 11(b)(3) at least as to the video-comprehensibility aspect of the claim when filing a reply. At present, however, the Court, after giving petitioner a substantial benefit of the doubt, holds that Ground 3 states a claim that does not require further amendment.